1

2

3

4

IN THE UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7

GERARDO ACEVES, et al.,

Plaintiffs,

8

9

v.

10

COINBASE GLOBAL, INC., et al.,

Defendants.

11

Case No.  24-cv-02663-MMC

**ORDER GRANTING DEFENDANTS'
MOTION TO TRANSFER**

12

13

      Before the Court is defendants' "Motion to Transfer Action to the Southern District

14

of New York or to Stay Action," filed October 16, 2024. Plaintiffs have filed opposition, to

15

which defendants have replied. Having read and considered the papers filed in support of

16

and in opposition to the motion, the Court rules as follows.[1]

17

**BACKGROUND**

18

      Plaintiffs Gerardo Aceves, Thomas Fan, Edwin Martinez, Tiffany Smoot, Edouard

19

Cordi, Brett Maggard, Mollijoy Carter, Bradley Barnes, and Antonett Foy, bring this

20

consolidated class action against defendants Coinbase Global, Inc., Coinbase, Inc.

21

(collectively "Coinbase"), and Brian Armstrong ("Armstrong"),[2] "broadly alleg[ing] that

22

Coinbase offers, sells, and solicits investment in unregistered securities and operates as

23

24

25

26

27

28

---

[1] By Order filed January 9, 2025, the Court took the matter under submission.

[2] According to plaintiffs, Armstrong "is the co-founder of Coinbase, and served as the Company's Chief Executive Officer ('CEO') and Chairman of the Coinbase Board of Directors ('Board')." (<u>See</u> Pls.' Consolidated Class Action Complaint ("CCAC") ¶ 17.)

United States District Court
Northern District of California

an unregistered broker/dealer in violation of California and Florida state law." (See Pls.' Opp'n. at 3:17-19.) Plaintiffs sue on behalf of a national putative class defined as "all persons and entities other than Defendants that purchased or otherwise acquired the Coinbase Digital Investments (including, but not limited to [seventy-nine digital assets][3] from January 1, 2017 through the commencement of this action." (See CACC ¶ 1.)

In particular, plaintiffs bring the following four claims under California state law: "Sale of Unregistered Securities" (Cal. Corp. Code §§ 25110, 25503), "Unlicensed Broker-Dealer" (Cal. Corp. Code § 25210), "Unlawful Acts and Practices" (Cal. Bus. & Prof. Code § 17200) and "Unfair Acts and Practices" (Cal. Bus. & Prof. Code § 17200).[4] Similarly, plaintiffs bring the following five claims under Florida state law: "Sale of Unregistered Securities" (Fla. Stat. § 517.07), "Unregistered Dealer" (Fla. Stat. § 517.211), "Negligence in Connection with the Purchase and Sale of an Investment" (Fla. Stat. § 517.301), "the Florida RICO Act" (Fla. Stat. § 772), and "Deceptive and Unfair Trade Practices Act" ("FDUPTA") (Fla. Stat. Ann. § 501.211(1)).[5] (See CACC ¶¶ 20-301.)

Plaintiffs filed their initial complaint on May 3, 2024. By order filed July 11, 2024, the action was consolidated with Carter, et al. v. Coinbase Global, Inc., et al., Case No.

---

[3] The above-referenced seventy-nine digital assets are listed as: "Coinbase Earn, 1INCH, ACH, ADA, AMP, ALGO, ANKR, AUCTION, AVAX, AAVE, ABT, AIOZ, BLZ, BAL, BAT, BOND, CGLD, CHZ, CLV, CRO, COMP, CTSI, cbETH, DOGE, DASH, DOT, ENJ, EOS, FET, FLR, FORTH, GNO, GODS, GAL, GALA, GRT, IMX, JASMY, KEEP, LRC, LINK, MANA, MATIC, MCO2, MLN, NKN, NCT, NEAR, NMR, NU, OP, OGN, OMG, POLS, PLU, PRO, RNDR, RARI, REQ, RLY, SUI, SUKU, SAND, SHIB, SKL, SOL, SUSHI, USDC, USDT, UMA, UNI, VET, XCN, XRP, XLM, XTZ, YFI, ZEN, and ZRX." (See CCAC ¶1.)

[4] The last two claims are brought under California's Unfair Competition Law ("UCL").

[5] In the heading for their claim under FDUPTA, plaintiffs add the phrase "On Behalf of the Florida Subclass." (See CCAC at 54:19-23.) The CCAC, however, contains no other reference to a subclass.

United States District Court
Northern District of California

United States District Court
Northern District of California

24-cv-03350,[6] and on September 16, 2024, plaintiffs filed the CCAC, which remains the operative pleading in the instant action.

Prior to the filing of the instant action, Christopher Underwood ("Underwood"), Louis Oberlander ("Oberlander"), and Zeneyda Patin, "individually and on behalf of all others similarly situated," brought suit on October 8, 2021, against Coinbase Global, Inc. in the Southern District of New York. See Underwood v. Coinbase, No. 1:21-cv-08353 (S.D.N.Y. 2021) ("Underwood Action"), after which, on March 11, 2022, Underwood and Oberlander, now joined by Henry Rodriguez, filed an amended complaint against Coinbase Global, Inc., Coinbase, Inc., and Brian Armstrong. In their Amended Complaint, said plaintiffs bring claims alleging the unlawful sale of unregistered "securities" and unlawful operation as an unregistered "securities exchange or . . . broker-dealer." (See Underwood Amended Compl. ¶1.)

The plaintiffs in the Underwood Action ("Underwood plaintiffs"), sue on behalf of a national putative class defined as "all persons or entities who transacted in [seventy-nine digital assets][7] on the Coinbase Platform . . . and/or the Coinbase Pro Platform . . . during the Class Period," defined as "between October 8, 2019 and the present" (see id. ¶ 1), as well as on behalf of California, Florida, and New Jersey subclasses (see id. ¶ 919).

---

[6] The initial complaint in Carter, et al. v. Coinbase Global, Inc., et al., Case No. 24-cv-03350 was filed June 4, 2024.

[7] The above-referenced seventy-nine digital assets are listed as: "1INCH, AAVE, ACH, ADA, AGLD, ALGO, AMP, ANKR, ARPA, ATOM, AUCTION, AXS, BAL, BAND, BAT, BNT, BOND, BTRST, CGLD, CLV, COMP, CRO, CRV, CTSI, CVC, DNT, DOGE, DOT, ENJ, EOS, FARM, FET, FIL, FORTH, GNT, GRT, GTC, ICP, IOTX, KEEP, KNC, LINK, LOOM, LRC, MANA, MATIC, MKR, MLN, NKN, NMR, NU, OGN, OMG, ORN, OXT, PLA, POLY, QNT, QUICK, RARI, REN, REP, RLC, SHIB, SKL, SNX, SOL, STORJ, SUSHI, TRB, TRIBE, UMA, UNI, XLM, XRP, XTZ, XYO, YFI, ZRX." (See Underwood Amended Compl. at n.1.)

3

In particular, the <u>Underwood</u> plaintiffs bring the following eight claims under California, Florida, and New Jersey state law, respectively: "Offer or Sale of Unqualified Securities" (Cal. Corp. Code §§ 25110, 25130, 25503), "Sale of Securities by an Unregistered Broker-Dealer" (Cal. Corp. Code §§ 25210, 25501.5(a)), and "Control Person Liability for Violations of the California Securities Act" (Cal. Corp. Code § 25504); "Offer or Sale of Unregistered Securities" (Fla. Stat. §§ 517.07, 517.211) and "Sale of Securities by an Unregistered Dealer" (Fla. Stat. §§ 517.12(1), 517.211); and "Offer or Sale of Unregistered Securities" (N.J. Stat. §§ 49:3-60, 49:3-71), "Sale of Securities by an Unregistered Broker-Dealer" (N.J. Stat. §§ 49:3-56(a), 49:3-71), and "Control Person Liability for Violations of the New Jersey Uniform Securities Act" (N.J. Stat. § 49:3-71(d)). (<u>See</u> <u>id.</u> ¶¶ 1016-1106.)

Additionally, the <u>Underwood</u> plaintiffs bring the following seven claims under federal securities law: "Offer and Sale of Unregistered Securities" (Securities Act §§ 5, 12(a)(1)), "Control Person Liability for Violations of the Securities Act" (Securities Act § 15), "Illegal Contracts to Pay Transaction Fees to an Unregistered Exchange" (Exchange Act §§ 5, 29(b)), "Illegal Contracts to Pay Transaction Fees to an Unregistered Broker or Dealer" (Exchange Act §§ 15(a)(1), 29(b)), "Illegal Contracts to Purchase Securities from an Unregistered Exchange" (Exchange Act §§ 5, 29(b)), "Illegal Contracts to Purchase Securities From an Unregistered Broker or Dealer" (Exchange Act §§ 15(a)(1), 29(b)), and "Control Person Liability for Violations of the Exchange Act" (Exchange Act § 20). (<u>See</u> <u>Underwood</u> Amended Compl. ¶¶ 931-1015.)

On February 1, 2023, the district court in the <u>Underwood</u> Action issued an order of dismissal, whereby it dismissed the federal claims with prejudice and chose not to exercise supplemental jurisdiction over the state law claims. Thereafter, on April 5, 2024,

the Second Circuit affirmed the dismissal of the Exchange Act claims but reversed the dismissal of the Securities Act claims and the dismissal of the state law claims. <u>See</u> <u>Underwood v. Coinbase Glob., Inc.,</u> 654 F. Supp. 3d 224, 244 (S.D.N.Y. 2023), <u>aff'd in</u> <u>part, rev'd in part and remanded sub nom.</u> <u>Oberlander v. Coinbase Glob. Inc.,</u> No. 23-184-CV, 2024 WL 1478773 (2d Cir. Apr. 5, 2024). On July 29, 2024, the <u>Underwood</u> defendants moved for judgment on the pleadings; on February 7, 2025, the motion was denied.

On October 16, 2024, defendants filed the instant Motion to Transfer citing the "first-to-file rule" (<u>see</u> Mot. to Transfer at 1:16), and, in support thereof, the <u>Underwood</u> Action (<u>see</u> <u>id.</u> at 1:6-9).

## DISCUSSION

Defendants argue the instant action should be transferred to the Southern District of New York, or, in the alternative, stayed pending resolution of the <u>Underwood</u> Action. In response, plaintiffs contend the action cannot be transferred, for the asserted reason that the Southern District of New York lacks jurisdiction and is an improper venue. Plaintiffs further contend the first-to-file rule is inapplicable.

### A. Jurisdiction and Venue

"A district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. A potential transferee court is one wherein there is (1) "subject matter jurisdiction" over the transferred action, (2) "personal jurisdiction over all . . . defendants," and (3) "venue . . . that [is] proper." <u>See,</u> <u>e.g.,</u> <u>Williams v. Bowman</u>, 157 F.Supp.2d 1103, 1105 (N.D. Cal. 2001).

Here, for the same reasons as applicable in this District, namely qualification under the Class Action Fairness Act ("CAFA"), the Court finds subject matter jurisdiction

United States District Court
Northern District of California

over the instant action exists in the Southern District of New York. See 28 U.S.C. § 1332(d)(2).

Next, the Court finds personal jurisdiction is satisfied. See N.Y. Civil Practice Law & Rules § 302(a)(1) (providing "court may exercise personal jurisdiction over any non-domiciliary . . . [that] transacts any business within [New York]").[8] (See also Pls.' Opp'n. at 6, n.5) (acknowledging Coinbase, Inc. is "registered in New York and lists an office in New York").[9]

Lastly, the Court finds venue is proper in the Southern District of New York. In that regard, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," see 28 U.S.C. §1391(a), and "may be proper in multiple districts," see Richmond Techs., Inc. v. Aumtech Bus. Sols., No. 11-CV-02460-LHK, 2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011) (citing Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005)); see also Knuttel v. Omaze, Inc., 572 F. Supp. 3d 866, 870 (N.D. Cal. 2021) (noting "venue inquiry focuses on the defendant's activities, not the plaintiffs"; further noting venue is "intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute") (internal quotation and citation omitted). Here, although plaintiffs' allegations of wrongdoing are not jurisdiction-specific, but, rather, concern digital assets offered on the national Coinbase trading platform and actions taken around the country,[10]

---

[8] See Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 137 (2023) (holding state statute requiring out-of-state corporation to consent to personal jurisdiction to do business there comports with Due Process Clause of Fourteenth Amendment.)

[9] In their respective arguments, the parties make no distinction between Coinbase and Armstrong. Consequently, the Court likewise does not do so herein.

[10] Plaintiffs allege, for example, "the Coinbase Digital Asset Enterprise's unlawful conduct and wrongful practices were carried out by an array of employees, working

plaintiffs, as noted, acknowledge Coinbase is registered in and has an office in New York, and the Underwood plaintiffs have alleged Armstrong "has . . . often traveled to New York City to promote Coinbase," including for the purpose of attending cryptocurrency conferences. (See Foster Reply Decl., Ex. D at 10, quoting Underwood Action Amended Compl.)

Accordingly, the Court finds the instant action could have been brought in the Southern District of New York.

## B. First-to-File Rule[11]

Pursuant to the first-to-file rule, "when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." See Cedars-Sinai Medical Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir.1997). In deciding whether to apply the first-to-file rule, a court considers: (1) the "chronology" of the actions; (2) the "identity" of the parties; and (3) the "similarity" of the issues at stake. See Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625 (9th Cir.1991). Although the rule is discretionary, see Adoma v. Univ. of Phoenix, 711 F.Supp.2d 1142,

_____

across state boundaries, who necessarily relied upon frequent transfers of documents, communications, information, products, and funds by the U.S. Mail and interstate wire facilities." (See CCAC ¶¶ 210.)

[11] Although plaintiffs devote a considerable part of their Opposition to a discussion of transfers pursuant to 28 U.S.C. § 1404(a), defendants do not bring their Motion to Transfer under that section, and to the extent plaintiffs may be contending the Court nonetheless should consider the factors applicable to a § 1404 motion, the Court declines to do so, as "normally the forum non conveniens argument should be addressed to the court in the first-filed action." See Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 96 (9th Cir. 1982).

United States District Court
Northern District of California

1146 (E.D. Cal. 2010), it "normally serves the purpose of promoting efficiency well and should not be disregarded lightly." See Church of Scientology v. United States Dept. of the Army, 611 F.2d 738, 750 (9th Cir.1979) (noting rule "is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments").

### 1. Chronology

There is no dispute here as to chronology, the Underwood Action having been filed more than two years prior to the instant action.

Accordingly, the Court finds the first prerequisite is satisfied.

### 2. Identity of Parties

There is no dispute that the defendants here and in the Underwood Action are identical. Plaintiffs contend, however, that the named plaintiffs are different and that the classes "differ in significant ways." (See Pls.' Opp'n. at 2:21-23.)

At the outset, the Court notes that the first-to-file rule "does not require exact identity of the parties[,] . . . only substantial similarity of parties." See Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1240 (9th Cir. 2015). Moreover, in considering whether the plaintiffs in two class actions are sufficiently similar, courts compare the classes, rather than the named plaintiffs. See, e.g., Adoma, 711 F.Supp.2d at 1147 (holding "[i]n a collective action, the classes and not the class representatives are compared"); Bellone v. First Transit, Inc., No. 21-CV-09617-HSG, 2022 WL 4292964, at *3 (N.D. Cal. Sept. 16, 2022) (noting "the majority of courts in this district compare the putative classes rather than the named plaintiffs, whether or not any class has been certified").

8

Here, the complaints in both the instant action and the <u>Underwood</u> action are brought on behalf of a nationwide class of consumers who bought Coinbase digital assets. Although plaintiffs point out that the instant class includes a larger number of digital assets and spans a longer period of time, "[d]istrict courts within the Ninth Circuit have found that proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals," <u>see</u> <u>id.</u> at *3 (internal quotation and citation omitted), particularly where one class subsumes the other, <u>see</u> <u>Hilton v. Apple Inc.,</u> No. C-13-2167, 2013 WL 5487317, at *7 (N.D. Cal. Oct. 1, 2013) (finding parties sufficiently similar where class in one action included all iPhone 4 and 4S purchasers, whereas class in other action included only iPhone 4 purchasers); <u>see</u> <u>also</u> <u>Reynosa v. Home Depot U.S.A., Inc.,</u> 2021 WL 5000693, at *2 (C.D. Cal. June 19, 2021) (finding similarity where class in first-filed action was subsumed by class in later-filed action).

Here, the Court finds the two class periods, namely January 1, 2017, through May 3, 2024, in the instant action, and October 8, 2019, through March 11, 2022, in the <u>Underwood</u> Action, overlap to a sufficient extent, and further notes that close to sixty percent of the class members' purchases overlap, namely forty-six of the seventy-nine digital assets in question.[12]

Accordingly, the Court finds the second prerequisite is satisfied.

### 3. Similarity of Issues

As with the parties, "[t]he issues in both cases also need not be identical, only

---

[12] The overlapping assets are: 1INCH, AAVE, ACH, ADA, ALGO, AMP, ANKR, AUCTION, BAL, BAT, BOND, CGLD, CLV, COMP, CRO, CTSI, DOGE, DOT, ENJ, EOS, FET, FORTH, GRT, KEEP, LINK, LRC, MANA, MATIC, MLN, NKN, NMR, NU, OGN, OMG, RARI, SHIB, SKL, SOL, SUSHI, UMA, UNI, XLM, XRP, XTZ, YFI, and ZRX.

United States District Court
Northern District of California

substantially similar." See Kohn, 787 F.3d at 1240. "To determine whether two suits involve substantially similar issues, [courts] look at whether there is substantial overlap between the two suits." See id. at 1241. See, e.g., Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1099 (N.D. Cal. 2006) (finding issues substantially similar where later-filed action asserted claims for tortious conduct and breach of contract and earlier-filed action asserted claims for breach of contract alone; noting legal issues were "intimately intertwined" in light of shared "factual and legal considerations").

Here, all of the California securities law claims that are brought in the instant action are also brought in the Underwood Action, and all but one of the Florida securities law claims that are brought in the instant action are also brought in the Underwood Action. Moreover, although each action includes several additional state law claims that the other does not, and although only the Underwood action includes federal securities claims, both actions share a "central question" and "common factual" underpinnings. See Adoma, 711 F. Supp. 2d at 1149. Specifically, the plaintiffs in both actions raise the question of whether Coinbase offers, sells, and solicits investment in unregistered securities and whether Coinbase operates as an unregistered broker or dealer in violation of California and Florida state law.

Plaintiffs contend the inclusion of federal securities claims in the Underwood Action nonetheless renders the first-to-file rule inapplicable because, the Underwood plaintiffs assert, "[t]he claims of the Underwood Action are primarily, and for all intents and purposes, federal securities claims" (see Pls.' Opp'n. at 12:25-26), and, according to plaintiffs, the district court's initial decision to choose not to exercise supplemental jurisdiction over the state claims demonstrates a tendency to "stick to federal claims, of which they are accustomed" (see Pls.' Opp'n. at 13:3). The Court is not persuaded. As

noted, the Southern District of New York has been directed to consider the state claims,

see Oberlander Coinbase Glob., Inc., No. 23-184-cv, 2024 WL 1478773, at 11, and

certainly is no less qualified to consider those claims than a court in this District. See

Rabinowitz v. Samsung Elecs. Am., Inc., No. 14-cv-00801-JCS, 2014 WL 5422576, at *7

(N.D. Cal. Oct. 10, 2014) (noting "District courts regularly apply the law of states other

than the forum state" and "are deemed capable of applying the substantive law of other

states") (internal quotation and citation omitted).

Accordingly, the third prerequisite is satisfied.

### C. Exception to First-to-File Rule

As plaintiffs point out, even if the prerequisites of the first-to-file rule are met, the

Court, in the interests of equity, has the discretion to refrain from applying the rule. See

Adoma 711 F.Supp.2d at 1149 (holding "[t]he [first-to-file] doctrine is discretionary and,

accordingly, the court may disregard it in the interests of equity"). "The circumstances

under which an exception to the first-to-file rule typically will be made include bad

faith . . . anticipatory suit, and forum shopping." See Alltrade, Inc. v. Uniweld Prods., Inc.,

946 F.2d 622, 628 (9th Cir. 1991) (internal quotation and citation omitted).

Rather than argue the above circumstances apply here, plaintiffs, citing Adoma,

711 F. Supp. 2d at 1150, argue other circumstances may be considered. Adoma,

however, is readily distinguishable from the present case. First, a primary concern of the

district court therein was a potential bar under the statute of limitations, particularly as it

pertained to class certification under the Fair Labor Standards Act, see id., and here,

plaintiffs raise no such concern. Second, although the district court in Adoma expressed

concern that the plaintiffs would lose the opportunity to litigate certain theories of

recovery in a timely matter, or at all, see id., the defendants therein had sought a

United States District Court
Northern District of California

dismissal or, in the alternative, a stay,[13] whereas defendants here seek, in the first instance, a transfer.

Accordingly, the Court finds the factors weighing in favor of application of the first-to-file rule are not outweighed by equitable considerations.

### CONCLUSION

For the reasons set forth above, the Court finds application of the first-to-file rule will best serve the interests of efficiency, judicial economy and the avoidance of conflicting judgments. Accordingly, defendants' Motion to Transfer is hereby GRANTED, and the above-titled action is hereby TRANSFERRED to the Southern District of New York.

**IT IS SO ORDERED.**

Dated: February 10, 2025

MAXINE M. CHESNEY
United States District

---

[13] In <u>Adoma</u>, the defendants sought a transfer, but only for convenience in connection with a motion under 28 U.S.C. § 1404(a).

12